UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

IN RE:

DOGWOOD PROPERTIES, G.P.              Case No. 13-21712-JDL

Debtor.                               Chapter 11

**AMENDED DISCLOSURE STATEMENT**

COMES NOW Dogwood Properties, G.P., as debtor-in-possession, pursuant to Section 1125 of the Bankruptcy Code, and for its Amended Disclosure Statement would respectfully show the following:

## I.      INTRODUCTION

The purpose of this Disclosure Statement is to provide parties asserting Claims against the Debtor with information regarding the treatment of those Claims under the Plan. This Disclosure Statement provides parties whose Claims or Interests are impaired under the Plan with adequate information to make an informed and prudent judgment when voting on the Plan. The Schedules and Statement of Financial Affairs filed by the Debtor, and the Monthly Operating Reports filed by Debtor are incorporated by reference into this Disclosure Statement as if set forth fully herein. Interested parties are encouraged to review these schedules and reports in connection with their consideration of the Plan.

This Disclosure Statement is not meant to take the place of the Plan. Any inconsistency between the Plan and this Disclosure Statement, the Schedules or Monthly Operating Reports shall be resolved in favor of the Plan. Claimants are encouraged to consult with their own attorneys regarding the Plan and Disclosure Statement.

The terms and definitions set forth in Article 1 of the Plan are also incorporated herein by reference.

This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan, and nothing contained in it shall constitute an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtor or any other party, except for those proceedings directly concerning the validity, enforceability, or construction of the Plan.

This Disclosure Statement should not be deemed as providing any advice regarding the tax implications or other legal effects of the Plan upon holder of Claims or Interests.

Except as set forth in this Disclosure Statement, the Bankruptcy Court has authorized no representations concerning the Debtor or the value of its assets.  In voting on the Plan, you should not rely upon any representations or inducements made to secure acceptance or rejection of the Plan other than those contained in this Disclosure Statement and Plan.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein.  Under no circumstances does delivery of this Disclosure Statement imply that there has been no change in the facts set forth herein since the date the Disclosure Statement was compiled.

The information contained herein has been provided by Debtor and is believed to be reliable.  Counsel for the Debtor has not performed an audit to verify the accuracy of the information contained herein and does not warrant or guarantee that there are no inaccuracies.

**IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR PURPOSES OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

## II.     VOTING ON AND CONFIRMATION OF THE PLAN

The confirmation of a plan of reorganization or liquidation is the method by which the claims of creditors against a debtor are satisfied.  Whether a plan is confirmed and implemented depends on the acceptance of creditors and approval of the Bankruptcy Court.

**Your vote is important**.  As a general rule under section 1126 of the Bankruptcy Code, an impaired class is deemed to have accepted the Plan if votes representing at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims voting in that Class have accepted the Plan.  The Claims of claimants who fail to vote on the Plan are not counted in the determination of whether the Plan has been accepted or rejected.  If the Court determines that the rejection or acceptance of any claimant was not in good faith, then the vote will not be counted.

3

Pursuant to section 1129(a)(10) of the Bankruptcy Code, at least one (1) impaired class of claims must accept the plan.  In addition, unless the Plan is unanimously accepted by the impaired claimants, in order to confirm the Plan, the Bankruptcy Court must independently determine that the Plan provides each claimant with a recovery which, as of the Effective Date, is at least equal to the distribution such claimant would have received if the Debtor were instead liquidated under Chapter 7 of the Bankruptcy Code.  The Debtor believes that the Plan meets this requirement.

Included with this Disclosure Statement is a ballot for your acceptance or rejection of the Plan.  If you hold a Voting Claim and you wish to vote to accept or reject the Plan after reviewing this Disclosure Statement and Plan, please:

1.  use only the ballot enclosed with this Disclosure Statement;

2.  indicate your vote on the enclosed ballot;

3.  date, sign and mail the ballot to Russell W. Savory, 88 Union Avenue, 14th Floor, Memphis, Tennessee 38103.

The Debtor, as proponent of the Plan, believes that the Plan provides the greatest possible recovery to all claimants.  The Debtor believe that acceptance of the Plan is in the best interest of all claimants and recommends voting for the Plan.

### III.      HISTORY OF DEBTOR AND EVENTS LEADING TO FILING

Dogwood Properties, G.P. started business in 2000 as "Dogwood Properties, LLC."  Initially, its business centered around home building.  Its equal partners are Jon McCreery and Philip Chamberlain.  As sales slowed in recent years, the Debtor began renting out the homes that it had built.  Due to the decline in market values the Debtor found it difficult to sell its properties and to pay the debts secured by the homes.  This

Chapter 11 case was filed in order to avoid foreclosures and to restructure the Debtor's

mortgage debt.


## IV.    THE CHAPTER 11 PROCEEDINGS

This Chapter 11 case was filed on February 16, 2013 to preserve the value of

Dogwood's business and to provide for the orderly payment of its debt.  Dogwood has

continued business operations as debtor-in-possession.  A trustee has not been appointed.

A Plan of Reorganization was filed on May 31, 2013.  During the course of the

proceedings, the Debtor has sought and obtained permission to use cash collateral and

make adequate protection payments to secured creditors.  The Debtor negotiated a

settlement with Paragon Bank whereby this lender's collateral would be surrendered in

exchange for releases from further obligations on all of the Debtor's obligations under the

loan agreements, and a release of some obligations of non-debtor borrowers and

guarantors.  The Debtor negotiated a settlement with Merchants & Farmers Bank

whereby all but one property constituting this lender's collateral would be surrendered in

exchange for releases from further obligations on all of the Debtor's obligations under the

loan agreements, and a release of obligations of non-debtor borrowers and guarantors.


## V.    SUMMARY OF POST-PETITION OPERATIONS

The Debtor has continued normal operations during the Chapter 11 case.  Its

rental properties are managed by an independent management company, Reed &

Associates, partners/managers Jon McCreery, Philip Chamberlain, CFO Lance McKee

and repairman Saul Hernandez.  More detailed information regarding post-petition

operations can be found in the Monthly Operating Reports that have been filed with the

Court.

5

Exhibit A to this Disclosure Statement contains an Income Statement and Balance

Sheet for year-end 2012 and the prepetition period for 2013.  A 120-month projection of

income and expenses is attached as Exhibit B.

### VI.    OTHER LITIGATON

There is no other litigation inside or outside the Chapter 11 case in which the

Debtor is involved.

### VII.    THE PLAN OF REORGANIZATION

#### A.    Future Operations of Debtor

The Plan provides that the Debtor continue operating under existing management.

The Debtor's property is anticipated to be managed as outlined in Part V herein.

#### B.    Means for Payment of Claims

The Plan provides that Claims will be paid from future operations and the

collection of rents.

#### C.    Payment of Claims

The Plan, the terms of which are incorporated herein provides for the payment of

claims.  The Tennessee Department of Revenue filed a priority claim relating to

Dogwood Properties, LLC, and the Debtor is reviewing this claim to determine if it is

disputed.  Debtor is currently not aware of any other material claims which it disputes or

intends to dispute.  A Schedule of Plan Treatment and Payments for the secured lenders is

attached hereto as Exhibit C.

#### D.    Valuation of Plan Properties

The value that Debtor has assigned to each of its rental properties is set out in

Schedule A, which was filed with the Court on March 5, 2013.  An additional copy of this

Schedule is attached hereto.

The Debtor determined the property values set forth in the Plan using Handbook 4150.2 published by the United States Department of Housing and Urban Development (July 1, 1999) and Statement on Financial Accounting Standard 157 (September, 2006). Handbook 4150.2, Section 4-6 describes the Sales Comparison Approach for determining valuation of single-family homes.  The Sales Comparison Approach provides valuations which closely parallel fair market value by observation and quantification of recent sales of similar properties in the same area to calculate a proper appraised value. A detail of individual property valuations has been provided on Schedule A (Document 89).  The Debtor considers the following factors when determining property valuation:

1.  The Debtor considers the timing of recent comparable sales in the area.  Sales which occur closer in time to the property valuation determination date are considered to reveal a more accurate reflection of fair market valuation.

2.  The Debtor considers the neighborhood amenities, upkeep, resident employment and education statistics, and other environmental factors when determining fair market valuation.

3.  The Debtor excludes or attributes less weight to some factors when determining fair market valuation.  For example, management considers list prices less than prices of closed sales or sales in escrow.  Furthermore, the Debtor excludes extraordinary instances of sale from its determination of market valuation.  Accordingly, the Debtor attributes less reliability to results of distressed sales and resite sales for comparable area houses.

4.  The Debtor considers quantitative and qualitative factors when determining fair market valuation.  The Debtor adjusts the determination of fair market value in its comparable sales analysis for variations in property rights conveyed, special financing or sales terms, circumstances of the sale, market

conditions, location, economic conditions, and physical characteristics of the property.

### E.    Independent Valuation Reports

The Debtor has not employed independent parties to perform valuation services for Plan assets.  It reserves the right to do so before the confirmation hearing, upon proper application to and approval by the Bankruptcy Court.

### F.    Personal Financial Statements of Managers

The personal financial statements of Jon McCreery and Philip Chamberlain will be made available for inspection upon request directed to counsel for the Debtor.

### G.    Avoidance Actions

The Debtor and its counsel do not anticipate any avoidance actions or actions against insiders, as a review of the Debtor's prepetition transactions reveal no grounds for such proceedings.  There are no current or pending avoidance actions against insiders.

### H.    Tax Consequences

The Debtor will continue to pay taxes through its individual members in accordance with Internal Revenue Code Section 701.  The partnership will pay no taxes, and income tax liability and self-employment tax liability will pass through to the members.  The Debtor makes no representation regarding the tax consequences to creditors in connection with the Plan.

### I.    Future Compensation of Partners and Staff

Partners/Managers Jon McCreery and Phil Chamberlain are each anticipated to receive compensation of $1,500.00 semimonthly.  CFO Lance McKee is anticipated to receive compensation of $1,923.57 biweekly.  Repairman Saul Hernandez is anticipated to receive compensation of $575.00 biweekly.

8

**J.      Method of Accounting**

The Debtor prepares financial statements in accordance with Generally Accepted

Accounting Principles.  The Debtor records all activity and operations of the partnership

on the accrual basis method of accounting.

**K.      Minimum Operating Capital**

Based on current projections, the Debtor believes it will have sufficient operating

capital such that minimum operating capital will be sustained without reducing the Net

Cash Flow amount as defined in Paragraph 1.9 of the Plan.

**L.      Proposed Interest Rates**

The proposed interest rate on secured claims under the Plan is 4%.  This rate is

based upon a ten (10) year Treasury yield rate with an additional risk factor.  By way of

example, the United States Department of the Treasury published a daily Treasury yield

rate of 1.99% on February 7, 2013 (available via http://www.treasury.gov/resource-

center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yieldYear&year=2013).

The ten-year yield rate was chosen by the Debtor because the time period of the yield is

consistent with the life of the Plan.  A risk factor is added for such variables as the lengths

of the loan terms, credit risk for the Debtor, and the overall residential real estate market

and economic climate.

**M.      Detail of Expenses and Pro Forma Projections**

The Pro Forma Statement of Operations provided as Exhibit B sets forth

anticipated income and expenses for the next 10 years of the Plan.  The projected

amounts are based upon income and expenses during the two most recent years of operations, taking into account reasonably foreseeable events, including anticipated increases in property taxes.

**N.**     **Prospects for Obtaining Financing for Balloon Payments**

The Debtor anticipates acquiring adequate financing of balloon payments proposed under the Plan through a combination of sales of property, refinancing and accumulation of cash.

**O.**     **Risk Factors**

The Debtor addresses several risk factors associated with the Plan:

1.   Interest Rate Fluctuation-The Plan addresses a downturn in market interest rates for lending and borrowing.  The Plan has set interest rates at the current ten (10) year interest rate on Treasury Notes and has included a risk factor to provide protection to its current lenders.

2.   Fluctuation in Market Value-The Debtor has set market values for Plan assets to reflect current market conditions.  The Debtor has used the comparative sales approach in determining fair market value.

3.   Catastrophic Loss-The Debtor anticipates that monthly net income will be adequate for any catastrophic losses which are not covered by the current insurance policies.

4.   Tax Changes-The Debtor regularly monitors changes in property tax assessments.  The Debtor appeals property tax assessments which are inconsistent with fair market values.  The entity is not subject to income taxation.  The Debtor foresees that the pass-through computation of income tax will continue throughout the duration of the plan.

# VIII.   LIQUIDATION ANALYSIS

The following is an analysis of the expected distribution pursuant to a hypothetical plan of liquidation.  With regard to Recovery from General Partners, the personal financial statements of the partners will be made available for inspection upon request directed to counsel for the Debtor.

| | |
|---|---|
| Real Estate (except Ardmore) | $8,820,381 |
| Ardmore | $10,000 |
| FFE | $1,000 |
| Bank Accounts | $20,000 |
| Recovery from General Partners | $0.00 |
| Total | $8,851,381 |
| LESS | |
| Secured Claims on Real Estate | ($12,911,493) |
| Net Liquidation Value | 31,000 |
| Est. Administrative Claims | ($20,000) |
| Priority Unsecured Claims - Tax | ($0.00) |
| Est. General Unsecured and Deficiency Claims | $4,060,112 |

Available for Unsecured Creditors                    $11,000.00

## IX.   CONFIRMATION PROCESS

Notwithstanding acceptance of the Plan by Classes of Claimants, in order to confirm the Plan the Bankruptcy Court must independently determine that the Plan is in the best interest of all claimants.  The "best interest" test requires that the Court find that the Plan provides each member of each impaired Class with a recover that is at least equal to the value of the distribution each Claimant would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.  The Debtor believes that the Plan satisfies this test.

The Debtor believes that the Plan is in the best interest of the Claimants.  In a Chapter 7 proceeding, a Chapter 7 trustee would be appointed to liquidate the Debtor's assets.  There is no guarantee that the trustee would be able to sell the debtor's assets for the full value listed in the schedules.  The Chapter 7 trustee would be entitled to receive a commission equal to 25% of the first $5,000 disbursed, 10% of the next $45,000 disbursed, 5% of the next $950,000 and 3% of the balance.  Further, a Chapter 7 trustee would retain professionals, including attorneys and accountants, in order to resolve objections to claims and other disputes.  Both the Chapter 7 trustee and professionals retained by the Chapter 7 trustee would require time to familiarize themselves with this case and would accrue fees treated as administrative expenses.  The Debtor believes that such a process would result in substantial duplication of effort and expenses incurred during this Chapter 11 case, as well as delay to the Claimants.  Thus, the appointment of a Chapter 7 trustee would increase the administrative expenses in this case and diminish the funds available for distribution.

The Debtor believes that the Plan provides the greatest possible recovery to the

Claimants.  Therefore, the Debtor believes that acceptance of the Plan is in the best

interest of the Claimants and recommends that you vote to accept the Plan.

Respectfully submitted,

/s/ Russell W. Savory
_____
Russell W. Savory (12786)
Attorney for Debtor
88 Union Avenue, 14th Floor
Memphis, TN  38103
901-523-1110

/s/ Graham Cox
_____
Graham Cox (031081)
Attorney for Debtor
149 South Rowlett
Collierville, TN 38017
901-853-3500